The next case today is United States v. Miguel Francisco Carrasquillo-Vilches, Appeal Number 21-1355. Attorney Manning, please introduce yourself for the record and proceed with your argument. Good morning, your honors. May it please the court, my name is Stephen Manning, representing the appellant Miguel Carrasquillo-Vilches. At this time, I would request two minutes for rebuttal, your honor. That's fine, thank you. The court should vacate the sentence in this case because it is procedurally unreasonable, substantively unreasonable, and the district court erred in its restitution order. With respect to the procedural aspect of the case, the district court applied an incorrect legal standard in assessing loss under the sentencing guidelines. What do you base that on, counsel? That is based on the confluence of two things. First, the probation officer, in two addendums, in the first addendum, the probation officer briefed the issue of how to determine intended loss. That's the probation officer, but the district court did not incorporate the probation officer on that point. The matter was argued separately to the district court and the argument was made to the district court, as it's made here, that an objective standard control, and I can't find anything in what the district court said during the sentencing hearing when it imposed the order that indicates to me that the point having been brought to the district court's attention, that the district court applied a subjective objective standard. Excuse me, an objective rather than a subject. I believe in the record, the district court indicated that with respect to the issue of intended loss, that the court agreed completely with the probation office. I don't believe... It agreed with the result as to the amount, but I didn't read that as saying that it agreed with the methodology. I don't believe... The government, for example, did not take the position that the probation had cited an incorrect legal standard and advised the court that it was a subjective standard after the 2015 amendment to the sentencing guidelines. I don't believe that the court as I read the record, the probation had twice indicated that it was this subjective standard. At the beginning of the sentencing, the district court had in front of him, and he referenced the addendum to the pre-sentence report. Five minutes remaining. Which was docket entry 58. The federal defender then supplied the more recent addendum, which was docket 85, which had been... That addendum had been issued only a week before the sentencing. I do not read the record as indicating that the court applied a standard other than the standard set forth by the probation office a week before the sentencing. Let me ask you the question this way. If the record is not a subjective standard, then it's not clear as to whether the court applied the objective standard, right? Why shouldn't the court get the benefit of the doubt, particularly in circumstances where it was aware of the recent amendment at the time that it ended down the aisle? I think the legal standard that is employed by the district court is central to the veracity or accuracy of any finding made pursuant to the standard. And I think the record... That doesn't get you very far, because the end result here is supportable, let's say, argue, assume, for the purposes of my question, the end result is supportable either by the objective or subjective standard. Why shouldn't we give the district court, which was aware of the recent amendment, the benefit of saying that the court, which did not say explicitly that it applied either standard, must have applied the correct standard? I understand the court's question. I disagree with the premise, however. I understand you don't think that the result is supportable either way, etc. That's why I asked you to assume it. So could you clarify precisely what happened at the hearing on this issue? Probation flatly states objective standard. Then I assume defense counsel objected to that. The defense counsel objected to the determination of $90,000 as loss and argued that there was no evidence of the subjective intent at the time the offense was committed. So did defense counsel clearly inform the court that it thought that the subjective rather than the objective standard applied? I believe that the argument was made certainly in writing, and I don't know... That's fine. And then the government, though, did not back off what probation said? No. The government did not indicate to the court that probation had applied an incorrect objective standard and that it had to be the new subjective standard. And then you got a decision that, as I read it, you couldn't tell what standard the court applied. The problem is that when the probation officer in the two addenda described the standard and as defined by this court as an objective standard prior to the 2015 amendment, the language purposely sought to inflict. So the probation officer's addendum was defining the post-amendment language as equal to the pre-amendment case law. That's time. Did you finish answering Judge Kayada's question? If not, we need you to finish answering it. I believe I did, Your Honor. Did I respond to the question? Did I miss something? Judge Kayada? Well, I think you did, but I think we know what the district court said. It didn't clarify what it was doing. Is that correct? The court was not specific as to... Are you pointing us to any language in the district court statement that you say shows that it's divided one way or the other? I think it's the language where the court is adopting probation. Throughout the sentencing proceeding, the district court is talking about its agreement with probation. Thank you. At this time, Mr. Manning, please mute your audio and video. And Attorney Lutero, if you could please unmute your audio and video at this time and introduce yourself on the record to begin. Good morning again, Your Honors. May it please the court, Maari Lutero for the government. Good morning. Good morning. First, the court should affirm Mr. Garaskio's sentence as both procedurally and substantively reasonable because the district court correctly determined that Mr. Garaskio intended the $90,000 loss resulting in the sixth-level Kayadan enhancement. And it also did not abuse its discretion in issuing a within Kayadan's 18-month sentence. And second, with regard to restitution, the court should affirm in part the district court's restitution order because it correctly included a security deposit as an actual loss to the victim. How was that loss to the victim? Was there damage to the apartment? It was not the damage to the apartment. As the government noted at sentencing, there's a clause 5 in the rental agreement itself that demonstrates that the deposit was intended to cover the cost of a renter that fails to fully perform his end of the contract. And it explicitly states that if tenant leaves the property before the end of the lease, then the security deposit will not be returned to the tenant. And the owner had the right to that security deposit in the event of noncompliance. As this court has recognized, actual loss is the financial harm that would have not happened, but for the defendant's criminal activity. And here, the owner would have been able to keep the security deposit if his renter had left earlier, but for the defendant's criminal activity. So here, Garaskio agreed that the owner was going to keep the deposit if he left before the end of the lease, so it was not an abuse of discretion for the sentencing court to include it as an actual loss here. Well, let me ask you this. The record indicates that the apartment was rented shortly after all of this happened, so it was rented within the term of the lease? There was no explicit discussion of the owner actually re-renting the lease after Mr. Garaskio left the premises. There is no indication one way or another whether he had rented the apartment thereafter or not. Well, should that determination have been made? I'm trying to figure out why some of this doesn't constitute a windfall for the landlord if, in fact, he did rent the apartment. With regard to the restitution, it comes down to what the owner had a right to based on the contract, and Mr. Garaskio explicitly agreed that the owner had the right to keep the security deposit if he had left the lease early. Indeed, I believe he even initialed But what about the other months that were subsequently rented? The question is, should it have been? In other words, if the landlord actually mitigated the damages by re-renting the apartment, why should this person be responsible for restitution in the full amount of the lease? With regard to restitution, or with regard to the loss of the $90,000 that goes to the guideline enhancement? Restitution wasn't ordered in the full amount of the lease, was it? No, it was not. Correct. Three months of lease that he stayed at the apartment and the security deposit that the owner had the right to keep under the rental agreement, just to clarify. Thank you. In addressing some of the arguments my brother also made with regard to the guideline enhancement, he notes that the district court applied an incorrect standard, and I will point your honors to page 153 of the record, where the district court explicitly addresses Mr. Garaskio's argument that he never intended not to pay, that his actual intent was not to pay, and so an actual loss should govern. And the district court recognizes that argument, says that, in essence, he wouldn't expect Mr. Garaskio to admit to harboring an unlawful mens rea here, and then determine that all the facts in the record show instead that his intention was not to pay. And that goes in line with the 2015 amendments. Looking at the 2015 amendments themselves, they adopt the Tenth Circuit approach to subjective intent analysis and cite the case Manateau 647F3-1048. And the Tenth Circuit also recognized that few, if any, defendants would admit to harboring an unlawful mens rea, and that the district court or the sentencing court is free to look at, or is free to draw reasonable inferences from available evidence in order to determine what the defendant's mental state is. Five minutes remaining. And here the district court ultimately determined that Mr. Garaskio was an ultimate con artist, that he never intended not to pay on the lease or on the contract. And that is referenced by the lie after a lie after a lie that he provided. He first claimed to be a regional director of DHS, and that he was entering into a lease on behalf of the federal government, and that a sub-director of DHS was approving the lease. He, indeed, based on his representations, the owner provided Mr. Garaskio the keys to the apartment even before he had provided any payments to the owner or even signed the lease agreement because, as Mr. Garaskio falsely claimed, DHS was reviewing the lease at the main office in Washington, D.C. And then he provided false emails, created false emails and documentation to show that DHS was backing the lease and was in the process of approving it. He then signed the lease representing that he took on an obligation on behalf of the government to pay $90,000 for 12 months, including providing a diplomatic clause where he, in a sense, wanted the owner of the apartment to look to the federal government to cover the remainder of the lease if he had, indeed, left the lease early. He also provided a bad check for the owner after the second month rent was due, and then even three months into the lease, when he was living at the property, when he was in eviction proceedings, he told, based on the minutes of the civil proceedings, he told the judge there that he was an employee of DHS, that he was expecting the payment to come through, and it was shortly forthcoming. So even at the eviction proceedings, he continued to lie in an effort to continue to stay in the apartment. Indeed, he provided an elaborate story about how the check was supposed to be picked up at DHS's Miami office and that DHS had issued at the start of the lease and that, for some reason, the owner who had lived in Miami was not able to go and pick up the check, so the check was canceled. And then that there was an issue with the payments and transferring the money from one account to another, and then that the DHS had ultimately reissued that check and that he was waiting for that check. So on this record, the district court did not clearly err in determining that Mr. Carrasquillo was a true con artist, providing a lie after a lie, and that he never intended to pay on the contract and purposely sought to inflict a $90,000 harm. So the Sixth Level Guideline Enhancement was a correct one here. And shortly mentioning the substantial reasonableness, Mr. Carrasquillo has not shown that his within-the-range sentence was unreasonable or an abuse of discretion. Indeed, his 18-month sentence was a guideline sentence, so it was a presumptively reasonable one, and he has not overcome that presumption here. So there is no reason for this court to disturb Mr. Carrasquillo's within-guideline sentence. I did address the restitution clause quite briefly. If the court has any other questions, I'm happy to answer them with regard to the security deposit. And I'll also briefly note that as to the victim's travel expenses, as the government indicated on Friday's letter, we recognize that mandatory restitution applies in this case. In appropriate cases, travel expenses may fall under a different subsection of the Mandatory Victims Restitution Act than addressed by the Supreme Court in Lagos. We recognize that they obey this argument in the present case, so we ask the court for a limited remand to exclude the travel expenses from the restitution order. Thank you, Counselor. Thank you. At this time, if Attorney Lutaro would please mute her audio and video, and Attorney Manning, you have two minutes for rebuttal. Please reintroduce yourself on the record to begin. Good morning, Your Honor. Stephen Manning for the appellant. First, I would like to respond to the argument made with respect to the security deposit. The argument made before this court today and in the brief of the government was not made in the district court. The argument in the district court did relate to paragraph 5, but it related to 5 subset A, talking about any unpaid rent. That was the language used by the AUSA, and that is why it does not represent actual loss subject to restitution. The restitution order covers the three months of loss of rent, and a fourth month would be a windfall, because the argument made in the district court was that the owner could keep it as, quote, unpaid rent. We can affirm that award on any ground made obvious from the record, and the language of the lease does permit the owner to keep the security deposit if there is an early termination of the lease. There's no question about that. Well, the language there doesn't apply to this case, because there is an early termination of the lease, it's just not a voluntary termination. And it allows the landlord to keep it, in other words, not to return it, but the landlord doesn't have it in order to return it. I know that, but he doesn't have it because of the fraud. So that argument, it seems to me, the defendant can't benefit from. Our position is that the government waived this argument because it didn't raise it in the district court, and that's the position we take in the reply brief. That's time. Thank you, Counselor. That concludes argument in this case. Attorney Manning and Attorney Lutaro, you should disconnect from the hearing at this time.